## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORDERO WILLIAMS,

                **Plaintiff,**

v.

IDOC,
C/O HUNGATE,
SGT. AGNEW,
JOHN M BARWICK,
JANE DOE 1,
JANE DOE 2, and
JOHN DOE 1,

                **Defendants.**

                **Case No. 26-cv-00035-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Cordero Williams commenced this lawsuit while an inmate of the Illinois Department of Corrections (IDOC). He brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Pinckneyville Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that on November 15, 2024, while he was incarcerated at Pinckneyville Correctional Center, Correctional Officer Hungate approached him saying that he had heard from friends at Centralia Correctional Center, where Plaintiff was previously housed, that Plaintiff

Page 1 of 14

thought of himself as tough but writes grievances. (Doc. 1, p. 4). Hungate also told Plaintiff that he "would introduce Plaintiff to someone though." (*Id.*). Plaintiff took this comment as a threat, and so, later that night, Plaintiff wrote a letter to Chief Administrative Officer John Doe 1 and "intel" describing his conversation with Hungate. (*Id.*). In the letter, Plaintiff asked for an investigation to be conducted and to be protected because he feared for his life. (*Id.*).

The next day, on November 16, 2024, Hungate came to Plaintiff's cell and placed him in handcuffs. (Doc. 1, p. 4). While Plaintiff was sitting in his cell handcuffed, he heard an inmate outside of his cell named Lamar Berger tell Hungate that he was not going to be housed with anyone and that he would assault whoever was inside the cell. (*Id.* at p. 4, 19). Hungate responded, "I know how you get down. Now this guy is going to find out." (*Id.* at p. 4). Plaintiff asked Hungate to "please get off that BS and to get [Plaintiff] a crisis team." (*Id.*). Hungate told Plaintiff, "You're getting beat up and raped and I might spray you." (*Id.*). Hungate then placed Berger in the cell with Plaintiff and closed the door. (*Id.*). Once inside the cell, Berger spat on Plaintiff, threatened him, and attempted to attack him. (*Id.*). Hungate instructed Berger to wait to assault Plaintiff until he had uncuffed Berger so that Berger could "get [Plaintiff] good." (*Id.* at p. 5). Plaintiff "pushed up against" Berger to defend himself and so that Berger did not have room to attack him. (*Id.*).

Sergeant Agnew arrived at the cell. (Doc. 1, p. 5). At the time, Plaintiff and the inmate were still both restrained with their hands cuffed, and they were not fighting. (*Id.*). Hungate told Agnew, "Light them up for me." (*Id.*). Agnew then sprayed a chemical agent onto Plaintiff. (*Id.*). Plaintiff started to choke and was in excruciating pain. (*Id.*). Plaintiff asked Hungate and Agnew for a chance to "properly decontaminate." Hungate told Agnew, "That one doesn't get a shower, he tried snitching on me." (*Id.*). Agnew responded, "I heard." (*Id.*).

Plaintiff was treated by a nurse, Jane Doe 1.[1] (Doc. 1, p. 5). He asked Jane Doe 1 for a

---

[1] In the Complaint, Plaintiff describes interacting with two unknown nurses. He lists two Jane Does as defendants,

shower. (*Id.*). The Jane Doe 1 told Plaintiff, "That's on them, you know how it goes." (*Id.*). When Plaintiff was escorted back to his cell, he again asked to be allowed to shower. (*Id.*). His request was denied. (*Id.*).

Plaintiff sent a letter to Chief Administrative Officer John Doe 1 stating that he was in severe pain from not being allowed to decontaminate and that he was suffering from burning skin, irritation to his eyes, and a headache. (Doc. 1, p. 5). Plaintiff did not receive a response to his letter, and he was not allowed to shower for "a few days." Plaintiff submitted a sick call slip but did not receive a medical appointment. (*Id.*).

Plaintiff spoke to a nurse, Jane Doe 2, when she "did med line." (Doc. 1, p. 5). Plaintiff informed her that he needed proper decontamination procedure and his eyes needed to be examined. (*Id.*). Jane Doe 2 responded, "One of Hungate's people must of made [the] sick call [slip] disappear. You know we're all friends here." (*Id.* at p. 5, 9). Jane Doe 2 failed to intervene or do anything to assist Plaintiff in receiving medical care. (*Id.* at p. 6).

### PRELIMINARY DISMISSAL

Plaintiff states that he is suing John Doe Intel Lieutenant under the Eighth Amendment for "being alerted that [he] was in imminent danger then failed to investigate, intervene, or to take responsible measures to protect Plaintiff causing an Eighth Amendment violation." (Doc. 1, p. 9). John Doe Intel Lieutenant, however, is not listed as a defendant. The Court will not treat parties not listed in the case caption or un the "Defendants" section of the complaint form as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Accordingly, any claims brought against John Doe Intel Lieutenant are dismissed.

---

and they are both described as nurses. (Doc. 1, p. 3). For clarity, the Court will refer to these individuals as Jane Doe 1 and Jane Doe 2.

The Court also dismisses any intended claims against John M. Barwick, described as the Warden at Pinckneyville Correctional Center. (Doc. 1, p. 2). Barwick is listed as a defendant, but Plaintiff does not identify him anywhere else in the Complaint. Thus, the Court is unable to ascertain what claims, if any, Plaintiff has against Barwick. Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). All claims against John Barwick are therefore dismissed.

And finally, the Court also dismisses IDOC as a defendant. IDOC is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Illinois,* 697 F.3d 612, 613 (7th Cir. 2012). Neither can IDOC be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp.3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases).

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** First Amendment claim against Hungate and Agnew for retaliating against Plaintiff because he filed grievances and reported threats.

**Count 2:** Eighth Amendment cruel and unusual punishment claim against Hungate for intentionally placing Plaintiff in a cell with a violent inmate on November 16, 2024.

**Count 3:** Eighth Amendment claim against Hungate and Agnew for the use of excessive force against Plaintiff on November 16, 2024.

**Count 4:** Eighth Amendment cruel and unusual punishment claim against Hungate, Agnew, Jane Doe 1, Jane Doe 2, and John Doe 1 for

refusing to allow Plaintiff to shower after he was sprayed on November 16, 2024, with a chemical agent.

**Count 5:** Eighth Amendment deliberate indifference claim against Jane Doe 2 for deliberate indifference to Plaintiff's serious medical needs – irritated/injured eyes caused by the chemical agent sprayed on him on November 16, 2024.

**Count 6:** Eighth Amendment claim against John Doe 1 for failing to intervene and protect Plaintiff from the misconduct of Hungate and Agnew that occurred on November 16, 2024.

**Count 7:** Illinois state law claim for intentional infliction of emotional distress against Hungate, Agnew, Jane Doe 1, Jane Doe 2, and John Doe 1.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

"To prevail on a First Amendment retaliation claim," a plaintiff must establish "that (1) he engaged in activity protected by the First Amendment; (2) he suffered an adverse action that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

Plaintiff asserts that because he has a history of filing grievances and he wrote a complaint against Hungate, Hungate threatened him and attempted to house him with an inmate known to be violent. Agnew then sprayed Plaintiff with a chemical agent, and both Hungate and Agnew refused to allow Plaintiff to shower. These allegations are sufficient for Count 1 to proceed against Hungate

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

and Agnew.

**Count 2**

Plaintiff has stated an Eighth Amendment claim against Hungate, who knew Plaintiff's cellmate, Berger, posed a substantial risk of serious injury to him yet intentionally placed Berger in the cell. Hungate not only failed to take appropriate steps to protect Plaintiff from danger but encouraged Berger to physically assault Plaintiff. *See Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

**Count 3**

Plaintiff's assertions that Agnew, at the direction of Hungate, sprayed him and his cellmate with a chemical agent while they were both restrained and not fighting states an Eighth Amendment claim for excessive force. *See Gaines v. Prentice*, No. 21-1588, 2022 WL 2304227, at *3 (7th Cir. June 27, 2022) (allegations that officer personally ordered the unnecessary and excessive use of mace without justification stated Eighth Amendment claim under § 1983) (citing *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (holding plaintiff must plausibly allege supervisor had requisite state of mind to state a claim for facilitating, approving, or condoning unlawful act); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (the use of force maliciously and sadistically to cause harm states claim under Eighth Amendment)). Count 3 will proceed against Hungate and Agnew.

**Count 4**

Plaintiff states that Hungate, Agnew, Jane Doe 1, and Jane Doe 2 denied his requests for a shower so that he could wash off the chemical agent that coated his face and body. He states that he had to wait "a few days" to shower, suffering ongoing pain and discomfort in the meantime. (Doc. 1, p. 5). Plaintiff has sufficiently stated an Eighth Amendment claim. *See Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005)( "detaining an inmate for eight hours after using chemical

agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering"). *See also Keller v. Sanchez,* No. 25-cv-712-MAB, 2025 WL 1734884, at *3 (S.D. Ill. June 23, 2025) (observing that the plaintiff's claim that he was refused a shower to wash off pepper spray was "better viewed as a generic cruel and unusual punishment claim" than deliberate indifference to serious medical needs). Count 4 will proceed against Hungate, Agnew, Jane Doe 1, and Jane Doe 2.

Count 4 will be dismissed against John Doe 1, the chief administrative officer. Supervisory liability does not constitute an independent legal theory under Section 1983. To state a claim against a defendant who is an upper-level official a plaintiff must allege that the supervisor knew of an underlying wrong and affirmatively assisted in furtherance of that wrong or deliberately turned a blind eye. Plaintiff's allegations, however, are too vague to state a claim against John Doe 1. A single letter sent to John Doe 1 informing him that Plaintiff needed a shower is insufficient for the Court to plausibly infer that John Doe knew about and disregarded a serious risk of harm to Plaintiff. *See Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

## Count 5

Plaintiff asserts that Jane Doe 2 "turned a blind eye to his medical needs" when she refused to help him after he told her that he had submitted a sick call request and that his eyes needed to be examined due to the chemical agent that had been sprayed. (Doc. 1, p. 5, 6). According to Plaintiff, Jane Doe 2 acknowledged that Plaintiff's sick call request probably "disappeared" at Hungate's request and stated, "We're all friends here." (*Id.* at p. 5, 9).

The Court notes that numerous courts in this Circuit and others "have specifically held that exposure to pepper spray or similar chemical agents does not create lingering effects that are objectively serious medical conditions for the purposes of the Eighth Amendment." *See e.g.,*

*Hughes v. Durrent,* No. 15 C 6432, 2017 WL 3978702, at * (N.D. Ill. Sept. 11, 2017) (collecting cases). However, exposure to a chemical agent, such as OC spray, can "result in a serious medical condition that implicates the Eighth Amendment," and is "a fact-intensive inquiry." *McCloud v. Vanschoyck,* No. 21-cv-00429-JPH-MKK, 2024 WL 229740, at *7 (S.D. Ind. Jan. 19, 2024). Therefore, given that Plaintiff pleads that (1) he was continuing to suffer from ongoing issues caused by the chemical agent; (2) Jane Doe 2 was aware that he was in need of additional treatment; (3) Jane Doe 2 knew that his sick call request had been mishandled or destroyed; and (4) Jane Doe 2 failed to ensure he received needed medical treatment, the Court finds that at this stage, Plaintiff has adequately stated a deliberate indifference claim against Jane Doe 2. Count 5 will proceed.

**Count 6**

Plaintiff asserts that John Doe 1, the chief administrative officer, was alerted that Plaintiff was in imminent danger from Hungate but "failed to investigate, intervene, or to take reasonable measures to protect [him]." (Doc. 1, p. 9).

A failure to intervene claim requires the plaintiff to plead that "(i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result." *Watkins v. Ghosh*, No. 11 C 1880, 2014 WL 840949, at *3 (N.D. Ill. Mar. 4, 2014) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)).

Plaintiff states that John Doe 1 was alerted to imminent harm by a letter he sent November 15, the day before Hungate and Agnew's misconduct. As stated above, one letter without any suggestion that it might have been received is typically not enough to sustain a Section 1983 claim premised on that individual's personal responsibility for some issue mentioned in the correspondence. *See e.g., Burks*, 555 F.3d at 595-96 (a letter-writing campaign to high-level officials such as local government officials or the prison warden is not sufficient to sustain a claim

Page 8 of 14

premised on personal involvement under Section 1983). There are no facts to suggest that John Doe 1 knew of Hungate and Agnew's unconstitutional conduct and had a realistic opportunity to prevent the harm based on Plaintiff's letter. Accordingly, Count 6 is dismissed.

**Count 7**

Plaintiff asserts that Hungate, Agnew, John Doe 1, Jane Doe 1, and Jane Doe 2 "engaged in extreme and outrageous conduct that exceeded all bounds of decency tolerated in a civilized society." (Doc. 1, p. 6). Because of Defendants' conduct, Plaintiff claims that he suffered severe emotional distress, including fear, anxiety, humiliation, psychological trauma, and mental anguish. (*Id.*).

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park,* 850 F.3d 308, 314 (7th Cir. 2017). *See also Bailey v. City of Chic.*, 779 F.3d 689, 696–97 (7th Cir. 2015); *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005) (citing *Pavlik v. Kornhaber,* 761 N.E.2d 175 (Ill. 2001)).

The Court considers it "extreme and outrageous" conduct that Hungate would orchestrate an attack on Plaintiff by another inmate, direct Agnew to spray Plaintiff with a chemical agent, and then refuse Plaintiff a shower. Furthermore, based on Hungate's threat to Plaintiff and Agnew's affirmation that he had heard that Plaintiff filed a complaint against Hungate, the Court can plausibly infer that Hungate and Agnew either intended to inflict severe emotional distress or knew there was a high probability that severe emotion distress would result from their actions. Count 7 will proceed against Hungate and Agnew.

Count 7 will also proceed against Jane Doe 2. According to Plaintiff, Jane Doe 2 knew that

Plaintiff was in need of a shower and medical care and that his sick call slips were purposefully not being processed, and Jane Doe 2 still refused to help him because she was friends with the staff members who had targeted Plaintiff. As pled, Jane Doe 2's behavior could be considered extreme and outrageous.

Count 7 is dismissed, however, against Jane Doe 1 and John Doe 1. Plaintiff states that after he was sprayed with the chemical agent, he was treated by Jane Doe 1. He asked Jane Doe 1 if he could shower, and she responded, "[T]hat's on them, you know how it goes." (Doc. 1, p. 5). Denying Plaintiff's request and relying on correctional staff to ensure Plaintiff received a shower is not outrageous behavior and does not allow the inference that Jane Doe 1 intended to cause or knew her actions would cause severe emotional distress. Count 7 is therefore dismissed against Jane Doe 1.

Because the Court has found that Plaintiff's letters to John Doe 1, the chief administrative officer, did not establish that John Doe 1 was personally involved or aware of any of the alleged constitutional violations, the Court finds that a lack of response by John Doe 1 was not extreme or outrageous. Count 7 is dismissed against John Doe 1.

### MOTIONS FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[3] In an attempt to find an attorney on his own, Plaintiff states that he has written to lawyers, and they declined to take his case. He has attached declination letters from three law firms to his Motion. Based on this information, the Court finds that Plaintiff has made reasonable efforts to retain counsel on his own.

With respect to his ability to pursue this action *pro se,* Plaintiff indicates that he only has a

---

[3] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

grade school education. He states that he is unable to represent himself because he cannot read and write, and he had assistance in drafting the Complaint. Nonetheless, the Court finds that Plaintiff is capable of proceeding *pro se,* at least for now. Given that this litigation is in the very early stages and Defendants have not been served, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens,* 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel…cannot be gauged."). Plaintiff has recently been released from custody, which means the people and resources available to assist him are now presumably more readily accessible. Thus, recruiting counsel would be premature. Should Plaintiff's situation change as the case proceeds, he may file another motion setting forth all facts that support his request for court recruited counsel.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the unknown defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Although all claims are dismissed against Warden Barwick, Barwick will remain a defendant in his official capacity only for the purpose of responding to discovery aimed at identifying Jane Doe 1 and Jane Doe 2. Guidelines and information for discovery will be set by a separate order once all Defendants are served.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Hungate and Agnew. **COUNT 2** will proceed against Hungate. **COUNT 3** will proceed against Hungate and Agnew. **COUNT 4** will proceed against Hungate, Agnew, Jane Doe 1, and Jane Doe 2 but is **DISMISSED without prejudice** as to John Doe 1, the chief administrative officer. **COUNT 5** will proceed against Jane Doe 2. **COUNT 6** is **DISMISSED without prejudice. COUNT 7** will proceed against Hungate, Agnew

and Jane Doe 2 and is **DIMISSED without prejudice** as to Jane Doe 1 and John Doe 1, the chief administrative officer. All intended claims against Warden Barwick are **DISMISSED without prejudice.** Because there are no surviving claims against IDOC and John Doe 1, the Clerk of Court is **DIRECTED** to terminate IDOC and John Doe 1 as parties on the docket.

The Clerk of Court shall prepare for Hungate, Agnew, John Barwick (official capacity only), and Jane Does 1 and 2 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes claims of physical injury, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendants, with the exception of Warden Barwick, are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendants should respond to the issues**

stated in this Merit Review Order.

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

     **IT IS SO ORDERED.**

     **DATED: June 1, 2026**

                                        **STEPHEN P. MCGLYNN**
                                        **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.